**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MELISA SUSAN KYLE,**<br>**a/k/a "Melisa Susan Vodden,"**<br><br>**Defendant.** | **Case No. 26-CR-189-SEH** |

## Response in Opposition to Defendant's Motion to Revoke Detention Order (Dkt. #29)

The government respectfully requests the Court deny defendant Melisa Kyle's motion to revoke the detention order in this case, because the defendant has failed to overcome the rebuttable presumption in favor of detention under 18 U.S.C. § 3142(e)(3)(A), and because the factors warranting pretrial detention under 18 U.S.C. § 3142(g) weigh in favor of upholding United States Magistrate Judge Mark T. Steele's Order of Detention Pending Trial.

## Relevant Facts

### Defendant was trafficking a large amount of methamphetamine

At the detention hearing the court took judicial notice of the pre-trial services report and the Complaint and affidavit. The United States also called Drug Enforcement Administration (DEA) Special Agent (SA) Laura Dominiguez to testify at the hearing. SA Dominguez testified to the following facts at the hearing.

SA Laura Dominiguez attended the DEA training academy and graduated in June 2024. Since then, she was assigned to the Tulsa residence office. She testified that she received training in surveillance, under cover work, clandestine laboratories, and distribution, including methamphetamine. SA Dominguez testified she was familiar with the case of Melisa Kyle and responded to the scene of the traffic stop.

SA Dominguez testified that Tulsa County Sheriff's Office Deputy Freddie Alaniz was working on May 10, 2026, and traveling on Interstate 44 in the Northern District of Oklahoma. Deputy Alaniz observed a Mazda CX-50 driving on the interstate. Deputy Alaniz conducted a license plate reader check on that vehicle. SA Dominguez testified that Deputy Alaniz learned from the license plate reader that the vehicle had traveled from Tulsa, Oklahoma, to the California/Arizona border and back. SA Dominiguez testified that Deputy Alaniz noted according to his report, from his training and experience, that often people who are transporting something illegal will make a short trip, short turn around.

SA Dominguez testified Deputy Alaniz was a narcotics K-9 officer with drug interdiction experience. After Deputy Alaniz conducted the license plate reader check on the vehicle, Deputy Alaniz observed the CX-50 to make a couple lane change violations. Deputy Alaniz also observed the CX-50 following too closely behind another vehicle.

SA Dominguez then conducted a traffic stop based upon the traffic violations and contacted the driver of the vehicle, Melisa Kyle. Ms. Kyle was the lone occupant of the vehicle. Deputy Alaniz engaged in conversation with Ms. Kyle at the passenger

side door. As Deputy Alaniz talked with Ms. Kyle, he observed the back seats in the vehicle to be laid down and saw about 4 large suitcases and one smaller suitcase. Ms. Kyle told Deputy Alaniz she had gone to California for a couple days.

SA Dominguez observed Ms. Kyle showed signs of nervousness. Deputy Alaniz requested Ms. Kyle's driver's license and vehicle registration. Ms. Kyle provided her driver's license to Deputy Alaniz and told Deputy Alaniz the vehicle was a rental vehicle. Deputy Alaniz asked Ms. Kyle to accompany him to his patrol car where he would be writing her a warning. Ms. Kyle then accompanied Deputy Alaniz to his patrol car.

SA Dominguez told Deputy Alaniz in the patrol car that she had been gone for six days in relation to her trip to California. Ms. Kyle was unable to remember which day she left on her trip. Ms. Kyle stated she bought a suitcase for the stuff she bought because she didn't want it to look silly in Walmart bags. Ms. Kyle said she went to her cousin's house in California and went swimming and hung out.

SA Dominguez testified that Deputy Alaniz gave her a warning for the traffic violations. Deputy Alaniz then asked Ms. Kyle if he could ask her some questions and Ms. Kyle responded in the affirmative. Deputy Alaniz informed Ms. Kyle that he was a drug interdiction officer. Deputy Alaniz then asked for consent to search her vehicle and Ms. Kyle denied consent.

Deputy Alaniz then advised Ms. Kyle that he would be conducting an exterior open-air sniff of her vehicle with his K-9 and Ms. Kyle was detained. Deputy Alaniz then waited for responding officers to arrive so he could conduct the open-air sniff.

After Deputy Alaniz advised her that he would be doing an open-air sniff, Ms. Kyle then advised Deputy Alaniz she had marijuana in the vehicle.

Deputy Alaniz subsequently did an exterior search of Ms. Kyle's rental vehicle with his narcotics K-9. The narcotics K9 alerted to the odor of narcotics. Deputies then conducted a search of the vehicle. Inside the suitcases in the vehicle, deputies located a crystal-like substance packaged in a manner consistent with drug traffickers, drug trafficking organizations, and transnational criminal organizations, to transport drugs across state lines. SA Dominguez also testified that the dryer sheets located in the suitcases were consistent with how drug trafficking organizations conceal narcotics.

The drugs seized from the suitcases were weighed and had a total package weight of approximately 44,528.9 gross grams. A couple of the bags were field tested and tested presumptively positive for methamphetamine. SA Dominguez testified the market value for the seized drugs was approximately $385,000. SA Dominiguez testified that the amount of methamphetamine seized could be distributed to hundreds of users of methamphetamine.

Deputies also located marijuana flower, numerous marijuana vapes, an additional marijuana flower, a glass pipe, a small glass jar containing a crystal-like substance, and an improvised smoking device in the car. Deputies also located a black locked box with 4 bundles of US currency held by rubber bands, totaling $7,000. SA Dominguez testified based on her training and experience the currency located was consistent with proceeds from drug trafficking.

SA Dominiguez testified that investigators obtained the rental records for the Mazda CX-50 from Enterprise. The rental agreement was initiated by Ms. Kyle on April 2, 2026. The odometer reading of the vehicle at the start of the rental was 37,647 miles. The odometer reading on May 4, 2026, was approximately 50,706 miles. SA Dominguez testified that it was fair to say that the vehicle traveled roughly around 15,000 miles in about a month and eight days given the odometer reading and her trip to California. SA Dominguez testified that the rental vehicle mileage in conjunction with the LPR [license plate reader] hits, Ms. Kyle's statements, and knowing there are sources of supply for methamphetamine in California, would be consistent with multiple trips to California.

SA Dominguez testified that based on how much methamphetamine Ms. Kyle was carrying, she would be considered a courier. SA Dominiguez testified that a courier could be selling drugs and it was possible a courier could not be selling drugs.

The Honorable Mark T. Steele found that the defendant had rebutted the presumption as it relates to flight risk but had not introduced sufficient evidence to rebut the presumption for detention as it related to the safety of the community. The Court ordered the defendant detained pending trial.

The United States supplements and incorporates by reference the facts presented at the detention hearing and court findings as contained in the recorded detention hearing audio which was submitted as Defendant's Exhibit 1.

## Argument and Authorities

### Standard of Review

Under the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 through 3150, a court may detain a defendant pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *See* 18 U.S.C. § 3142(e). At the hearing, the government bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness to any other person or to the community by clear-and-convincing evidence. *See* 18 U.S.C. § 3142(f); *see also United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). To determine whether there are conditions that will reasonably assure the defendant's appearance and the community's safety, the magistrate must consider factors concerning:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including:
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial,

> sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .
>
> 18 U.S.C. § 3142(g).

Regarding the "danger to the community" factor, the Tenth Circuit has noted that the legislative history of Section 3142 suggests Congress was concerned with more than just the danger of physical violence. *United States v. Portillo-Camargo*, 2022 U.S. App. LEXIS 28128 at *11 (10th Cir. 2022). "The risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any person or the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989). "The distribution of illegal narcotics constitute a serious and pervasive danger to the community. A single drug dealer with a well connected system of distribution can wreak more havoc on a community that an armed band of thieves or gangsters." *United States v. Cox*, 635 F.Supp. 1047, 1054 (D. Kan. 1986). When the accused is an organizer or supervisor within a drug conspiracy—as opposed to a mere courier—the "detriment to the community" concern raised in Section 3142(e) is greater. *Portillo-Camargo* 2022 U.S. App. LEXIS at *12.

A rebuttable presumption of detention applies under 18 U.S.C § 3142(e)(3)(A) where the defendant is charged with a violation of the Controlled Substances Act with a maximum potential term of imprisonment of more than ten years. The presumption applies in the instant case. The presumption "reflects Congress's substantive judgement that particular classes of offenders should ordinarily be

detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). When the presumption is raised, and accused must present some evidence to overcome the presumption. *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991).

"If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). "A district court conducts a *de novo* review of a magistrate judge's detention order, *Cisneros*, 328 F.3d at 616 n.1, but there is no statutory requirement that the court hold a hearing[.]" *United States v. Oaks*, No. 19-1342, 2019 WL 5692529, at *2 (10th Cir. 2019) (unpublished). "Rather, the court may hold a hearing, if it so chooses." *Id*.

**The nature and circumstances of Ms. Kyle's offense weigh in favor of detention, and the rebuttable presumption applies.**

Ms. Kyle was in possession of a large quantity of methamphetamine. SA Dominiguez testified that the total package weight of the seized methamphetamine was approximately 44,528.9 grams. In addition, Ms. Kyle was in possession of $7,000 in United States currency. SA Dominiguez testified that Ms. Kyle's conduct in transporting a large quantity of methamphetamine was consistent with the activities of a drug trafficking organization and transnational criminal organization.

SA Dominguez testified that the market value of the seized drugs was approximately $385,000 dollars. SA Dominguez also testified that the $7,000 seized from Ms. Kyle's rental vehicle was consistent with drug trafficking proceeds. SA

Dominiguez also testified that given the approximately 15,000 miles that were put on the vehicle in about a month and eight days, SA Dominguez stated that activity was consistent with multiple trips to California. SA Dominiguez testified that she believed Ms. Kyle was a courier. SA Dominguez testified that the amount of drugs seized from Ms. Kyle's vehicle could be distributed to hundreds of drug users.

Ms. Kyle also has a prior conviction from September 29, 2016 for: Distribute, Deliver, Manufacture Controlled Substance, in Lawrence County Circuit Court, Case number 15LWCR0171601, as documented in the pre-trial services report that was admitted at the detention hearing as evidence pursuant to judicial notice.

**The weight of the evidence against Ms. Kyle is strong.**

The evidence against Ms. Kyle is strong, and weighs in favor of detention. Ms. Kyle admitted to law enforcement the suitcases in the rental vehicle she was driving belonged to her. Ms. Kyle also admitted to making a short trip to California and returning with the suitcases. Inside the suitcases was a total package weight of approximately 44,528.9 grams of methamphetamine. There was also other evidence in the case that was consistent with drug trafficking including, Ms. Kyle's short round trip to a drug source state, possessing $7,000 bundled in cash inside the vehicle, dryer sheets used to conceal the odor the drugs, the manner in which the drugs were packaged, and the use of a rental vehicle for traveling approximately 15,000 miles over approximately a month and eight days. Additionally, the defendant's prior drug conviction in 2016 is additional evidence for proving Ms.

Kyle’s motive, intent, knowledge, plan, and absence of mistake in the presently charged drug crime.

**The nature and seriousness of the danger to any person or the community that would be posed by the person's release.**

The evidence presented at the detention hearing proves the defendant was involved in the trafficking of a large quantity of methamphetamine. The market value of the drugs was approximately $385,000 according to DEA SA Laura Dominguez. SA Dominguez also testified that the quantity of drugs seized could be distributed to hundreds of drug users.

Distribution of this quantity of methamphetamine poses a significant risk to public safety. Drug distribution provides a significant amount of money for illicit criminal organizations. In this case, SA Laura Dominguez testified the drugs were worth approximately $385,000. The proceeds from the distribution of the seized drugs would have provided the drug trafficking organization a significant amount of money to further their criminal activities. Additionally, the distribution of the large quantity of methamphetamine also poses a tremendous health risk to those that use drugs and those affected by the actions of drug addicts. If the defendant were released and reconnected with the drug trafficking organization involved in the distribution of large quantities of methamphetamine, she would pose a significant risk to the community, both from direct and collateral consequences of trafficking large quantities of methamphetamine.

**Conditions that will reasonably assure the defendant's appearance.**

It should also be noted that Ms. Kyle is not a resident of Oklahoma and has not had a job since 2023 (as noted in the pre-trial services report). Ms. Kyle also has limited assets. The pre-trial services report noted she had $300 in cash, and a CashApp and Chime account with a combined balance of $600. Ms. Kyle also reported that her monthly expenses total $1,300. The pretrial services report noted that the majority of Ms. Kyle's bills are paid from a trust account but there were no additional details regarding how much money she receives from the trust account or the trust account balance. The pre-trial services report also noted that Ms. Kyle has $5,000 cash at her house. Given the defendant's involvement in the trafficking of large quantities of methamphetamine worth hundreds of thousands of dollars, and the fact she possessed $7,000 cash along with the drugs in this case, the government is concerned that Ms. Kyle's primary source of income is derived from illicit criminal activity rather than legitimate sources of income.

Given Ms. Kyle's limited ties to the state of Oklahoma, her lack of employment since 2023, and her involvement in trafficking large quantities of methamphetamine, the Government is concerned that Ms. Kyle poses a risk of failing to appear and being able to support herself without resorting to illegal activity if she is released from custody.

**Judge Steele considered the conditions put forward by the defendant and correctly found that they were insufficient to protect the safety of the community.**

At the detention hearing, defense had the opportunity to present evidence, proposed possible conditions for release, and make arguments for release. Judge Steele properly considered those arguments and potential conditions for release, and appropriately ruled that the defendant should be detained pending trial. The Court found that defense had not overcome the rebuttable presumption as it relates to the safety of the community. The Order should remain undisturbed, and Ms. Kyle should continue to be detained pending trial.

## Conclusion

The Court should deny Ms. Kyle's motion to revoke the detention order and uphold Judge Steele's Detention Order because the defendant has not overcome the presumption in favor of detention under 18 U.S.C. § 3142(e)(3), and because the factors warranting pretrial detention under 18 U.S.C. § 3142(g) weigh in favor of detention. Ms. Kyle is a danger to the community, and no condition or combination of conditions can reasonably assure the safety of persons within the community.

Respectfully submitted,

CLINTON JOHNSON
UNITED STATES ATTORNEY

*/s/ Tyson J. McCoy*

Tyson J. McCoy, CA Bar No. 270782
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

**Certificate of Service**

I hereby certify that on the 17th day of June, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to:

Robert Williams
*Attorney for Defendant*

*/s/ Tyson J. McCoy*
Tyson J. McCoy
Assistant United States Attorney